## THE LEADER

(Circuit Court of Appeals, Third Circuit. May 1, 1911.)

### No. 9.

TOWAGE (§ 15*)—INJURY TO TOW—NEGLIGENCE OF TUG.

Evidence considered, and *held* to sustain the allegations of a libel that the sinking of a dredge by striking a rock while being towed down the Ohio in front of a steamer was due to the fault of the steamer in passing through a narrow and tortuous channel between an island and the north shore in a negligent and unskillful manner.

[Ed. Note.—For other cases, see Towage, Dec. Dig. § 15.*]

Appeal from the District Court of the United States for the Western District of Pennsylvania.

Suit in admiralty by the Enterprise Contracting Company against the steamer Leader; S. W. Carpenter, claimant. Decree for respondent, and libelant appeals. Reversed.

For opinion below, see 181 Fed. 743.

Lowrie C. Barton, for appellant.

Albert York Smith, for appellee.

Before GRAY and BUFFINGTON, Circuit Judges, and YOUNG, District Judge.

BUFFINGTON, Circuit Judge. In the court below the Enterprise Contracting Company, owner of a dredgeboat, filed a libel against the towboat Leader, to recover damages for the latter's alleged negligence in injuring and sinking such dredge. The proofs show that the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Leader, a stern-wheel towboat, undertook to tow libelant's dredge and two scows down the Ohio river from Sewickley to Lock No. 11. The scows were lashed to the head of the towboat, and the dredge, stern foremost, to the head of the scows. The dredge had three heavy, steam-operated spuds, one at her stern and two at either side of the bow. The latter spuds weighed nearly five tons each. In passing the channel between Felice Island and the north shore, the dredge struck a rock, which tore a hole beginning at the rake of the stern (which was the bow of the tow), and extending 20 feet back, parallel to and 8 feet from the gunwale. Its cross-planks and false bottom were broken through, the break growing larger as it progressed. The dredge sank.

The allegation of the libelant was that the Leader was at fault in attempting to go through the Felice channel under headway, instead of flanking sideways, and that in doing so she got out of the channel and ran head-on upon a rock near the north shore. The allegation of the towboat was that, while flanking through the channel, the spud on the north side of the dredge, near the head of the scow, dropped, through the negligence of the dredge's crew, and that this caused the head of the tow to swing around and strike as charged. The libelant admits the spud dropped, but says it fell after the Leader struck the rock, and its fall had nothing to do with the accident.

We have carefully examined all the proofs, and have reached the conclusion the libel should be sustained. To our mind the weight of the testimony is clearly with the libelant. Leaving out of question the proof of the respective crews of the Leader and the dredge, each of which contradicts the other, both as to the mode of navigation and as to the time the spud fell with reference to striking the rock, we are clear that there is overpowering proof from other sources in those particulars. The channel at Felice is tortuous, narrow, and hard to navigate. At the then stage of water there was no question but that it would not have been good seamanship for the Leader, with her tow, to attempt to pass through it under steam headway and paralleling the north shore. In view of this, we are warranted in giving serious weight to libelant's witness Cook. He was apparently wholly disinterested, was operating a ferry some 400 to 500 yards above Felice, and was familiar with the way boats passed that channel. He was crossing the river as the Leader went down, and his testimony is that "she was going down parallel with the north shore," that at that stage of water "she should have gone with the rear end towards the south shore," that navigating as she did "she would hit that narrow place there," and that from where he was "it appeared to me the front end of this boat struck this bar." Moreover, Corbett, the engineer of the Leader, says that at the time the tow struck the Leader was working ahead on a slow bell, which supports libelant's contention that she was not flanking through the channel.

But, over and above the possible uncertainty of human testimony, we have silent, but convincing, proof from the character of the injury itself. No explanation is vouchsafed by either witnesses, respondent, or counsel as to how such a tear in the dredge's bottom could be caused by a sidewise swing of the tow. It began at the rake of the dredge at

the head of the tow. It began 8 feet from the gunwale. It extended 20 feet back, 8 feet distant from, and parallel to, the gunwale. If during this time the towboat was backing under full head and drawing the dredge away from the obstruction, or a five-ton spud was on the rocky bottom of this swift channel, preventing it from going forward, it is inexplicable that this rent, which has every appearance of a head-on course, could have been made by a sidewise swing. And the fact that its location was such as it was is only explicable on libelant's contention that the Leader attempted to pass the channel by paralleling the shore, and in so doing struck the rock head-on.

The decree must therefore be reversed, and the case remanded, with directions to enter a decree in favor of the libelant, and assess such damages as it sustained.